**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 19-294-01 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| ORENTHA JAMES PEA | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court are the Defendant's objections to Magistrate Judge Hornsby's Report and Recommendation ("R&R") [Record Document 29]. Record Document 30. In his R&R, Judge Hornsby recommended that Orentha Pea's ("Pea") motion to suppress [Record Document 21] be denied. Pursuant to 28 U.S.C. § 636(b)(1), this Court is required to conduct a de novo review of the portions of the R&R to which objections were filed. The Court may then accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge. Even when the objections challenge credibility determinations, the district court is not required to re-hear the suppression hearing testimony, but rather may defer to the magistrate judge's credibility findings when they are supported by the record. United States v. Gibbs, 421 F.3d 352, 357 (5th Cir. 2005); see Louis v. Blackburn, 630 F.2d 1105, 1109 (5th Cir. 1980) ("One of the most important principles in our judicial system is the deference given to the finder of fact who hears the live testimony of witnesses because of his opportunity to judge the credibility of those witnesses."). Following a thorough review of the motion, the parties' briefing in

this matter, the R&R, and the objections thereto, the Court hereby **ADOPTS** the R&R with the following additional observations.[1]

In this case, Pea seeks to suppress a firearm discovered during a search of the residence of his estranged wife, Ms. Montgomery ("Montgomery"), and the principal dispute is whether Pea was an invited guest at the residence such that he had a reasonable expectation of privacy. If he was not an invited guest, then he lacks standing to challenge the search under the Fourth Amendment, and the inquiry ends there. On the other hand, if he was an invited guest, he would have standing to contest the search. If he has standing to challenge the search, the Government would have to prove that Montgomery's consent to search her residence for the gun was valid.

At a suppression hearing in this matter, two police officers testified. The first, Shreveport Police Officer Richard Pollitt ("Pollitt"), testified to Montgomery's verbal consent to search her house, the search he performed of Montgomery's house, how and where he found the firearm, and how he personally witnessed Montgomery sign the consent to search form after it was reviewed with her by another officer. There has been no challenge to his testimony on these critical points.

The second officer, ATF Task Force Officer Toby Morrison, was not present on the day of the search, but testified to his subsequent repeated discussions with Montgomery regarding Pea's access to her home and the events that led up to the search of her house. Morrison testified that Montgomery told him that in the past, she has repeatedly asked

---

[1] The Government did not file anything in response to the Defendant's timely objections to the R&R.

2

Pea to leave her house, but that he usually refuses. When he does leave, he always manages to get back inside even when the doors are locked.

Pea testified on his own behalf and stated that Montgomery had called him the night before the search and asked him for "wash money" because her washing machine was broken. He testified that Montgomery offered to come pick him up from either Mansfield or Grand Cane, where he was at the time of the phone call.[2] He told her that he could find a ride to her house. He arrived at her home that evening between 11:00 p.m. and 12:00 a.m. in order to fix the washing machine, although his testimony does not suggest that he ever actually did any of that work. Instead, he walked in through the garage, saw Montgomery sitting in the kitchen, "walked back outside and went out there and played, messed with my son, went in the house and went to sleep." Record Document 31, p. 46. Pea stated that Montgomery never asked him to leave.

1. <u>Pea's legal status at the residence</u>.

As clearly documented in the R&R, Judge Hornsby concluded that Pea was an uninvited guest in Montgomery's home. Pea objects to the Magistrate crediting the officers' testimony as to his status as a guest over his own testimony. The undersigned has thoroughly reviewed the testimony of all witnesses who testified at the suppression hearing. Following this review, the Court finds that the Magistrate Judge's credibility determinations are supported by the record.

---

[2] At one point, Pea stated he was in Mansfield when Montgomery called him, and later in his testimony, he stated he was in Grand Cane. Record Document 31, pp. 45, 47.

3

Pea concedes that his name was removed from the lease on Montgomery's residence the month prior to this incident, but insists he was an invited guest nonetheless, explaining that it is plausible that he and Montgomery had reconciled. He points to three facts in support of this contention: (1) that Montgomery has a history of reconciling with him, namely after he shot her in the back in 2005 while she was pregnant with his child; (2) in May of 2018, his name was on the house's lease with Montgomery, showing they were together in some sense of the term at that time, though Pea's name was removed from the lease that December; and (3) on the day before the search of Montgomery's house, Montgomery and Pea were together in Mansfield with two of their children. Pea asserts that these three facts are "adequate evidence that he and [Montgomery] had reconciled and that he was invited over on January 13, 2019" and also that the officers' testimony to the contrary should not be accorded the same weight as his testimony on this point. Record Document 30, p. 3.

This Court disagrees. First, the Magistrate Judge heard all of the witness testimony live and was able to assess the credibility of each witness. The Court is deferential to the Magistrate's ability to judge the credibility of those witnesses who testified before him in this hearing. The Magistrate found the other testimony more credible than Pea's, and that conclusion is supported by the record. Second, because Pea's arguments hinge so heavily on the concept of reconciliation, the Court points out that reconciliation does not automatically equate with an overnight invitation, which is the inferential leap the Defendant seems to be asking the Court to make. Thus, even if they had reconciled, that does not result in a finding that Pea was an invited guest.

Third, contrary to Pea's assertion that he was an invited guest, Pea admitted during his testimony that Montgomery did not invite him to spend the night. Thus, by his own admission, he was not an invited overnight guest. In contacting Pea, Montgomery simply asked for him to provide money. Pea's statements that Montgomery asked him to repair the washing machine are equivocal, at best, and certainly do not amount to convincing evidence that Montgomery invited him to her house. The Court's review of the transcript leaves the impression that, in addition to deciding to go to Montgomery's house to repair the washing machine, Pea unilaterally decided to spend the night. This is demonstrated by Pea's testimony on cross-examination:

> Q: Did she ask you to come just to give her wash money?
>
> A: Well, she wanted me to fix her washing machines, put the washing machines together, give her wash money . . . . [S]he volunteered to come pick me up, but I told her, don't worry about it, I would find a way.
>
> Q: So it wasn't to come spend the night; it was to come give her wash money?
>
> A: Well, yeah--I don't have no transportation, so, yeah, I'm going to have to spend the night.
>
> Q: But she just specifically asked for wash money?
>
> A: Yeah.

Record Document 31, pp. 49-50. Thus, Pea's own testimony clearly establishes that he was not invited as an overnight guest.

Fourth, the events that led to the police searching Montgomery's house provide circumstantial evidence corroborating Montgomery's claim- through Morrison- that Pea was not invited as an overnight guest. The scene unfolded the morning after Pea showed

up at Montgomery's house and decided to spend the night. Montgomery called 911 and reported an assault and battery. She told officers that the perpetrator, Pea, was inside her home. She stated she would not return to the home without police assistance. Looking very frightened at the time the police arrived, she told the responding officers that the night prior, while they were driving, Pea pulled a gun on her and said in front of two of their children, "I'm going to blow your head off, bitch." Record Document 31, p 6. She gave verbal permission to the officers to find and remove the gun, which she said was probably hidden inside. Record Document 31, p. 15. When police confronted Pea, who sure enough was inside Montgomery's house, he did not tell them he had been invited over. Record Document 31, p. 10.

The facts above were all established through the testimony of Officer Pollitt who was on the scene of the search. Significantly, these facts are completely unchallenged by Pea. Thus, the undisputed evidence is that this all occurred at Montgomery's home (which is no longer shared by Pea), she called the police to report an assault and battery committed by Pea, she told the police he had a firearm, and she asked the police- or at the very least, consented- to search her home to find the gun. Though it may be circumstantial, this is strong and unrefuted evidence of Montgomery's belief that Pea was not an invited guest in her home. Pea cannot defeat this evidence with speculative and unsubstantiated arguments that he and Montgomery may have reconciled.

The Magistrate Judge's credibility findings are well supported by the record in this matter and will not be disturbed by this Court. The Court adopts the finding that Pea was not an invited guest, and as such, he lacks standing to challenge the search of

Montgomery's house. That should end the Fourth Amendment inquiry there. However, out of an abundance of caution, the Court will address Pea's remaining objections.

2. <u>Montgomery's consent to the search.</u>

In this case, no one disputes that Montgomery verbally consented to the search of her residence. While Pea makes much of the fact that the consent to search form is missing from police records, that does not salvage his claim. A signed consent to search form is a method of documenting that consent has been given, but the absence of a signed form does not constitute an invalid search. Pea has not pointed to any jurisprudence that suggests that a signed consent form is necessary to prove valid consent. To the contrary, in <u>United States v. Mata</u>, 517 F.3d 279, 291 (5th Cir. 2008), the Fifth Circuit found valid consent existed when the defendant gave oral consent but refused to sign a form. The facts of the instant case are even more favorable for the Government, as there is no evidence that Montgomery withheld consent or that she equivocated in giving it. In short, the absence of a consent form is not a legal impediment when valid verbal consent has been given. All of the evidence supports a finding that Montgomery gave both verbal and written consent, and there is no convincing reason for this Court to overlook that evidence.

3. <u>Use of hearsay testimony.</u>

Pea objects to the use of hearsay during the suppression hearing, arguing that the Government relied so heavily on hearsay testimony that it deprived him of his right to confront and cross-examine the witnesses against him. In making this objection, Pea is specifically objecting to Morrison's use as a witness to relay Montgomery's version of

events and her tumultuous history with Pea. Pea concedes that hearsay is permitted in suppression hearings. And, he has not cited any cases under the Confrontation Clause, nor has he provided any analysis to suggest that the Magistrate's acceptance of Morrison's testimony violated Pea's Sixth Amendment rights. Indeed, Pea has cited no legal authority whatsoever.

It is well-established that the rules of evidence do not apply in suppression hearings. See F.R.E. 1101(d)(1); see also United States v. Raddatz, 447 U.S. 667, 679 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial"). However, the Fifth Circuit recently stated that "although the Sixth Amendment right to confront is a trial right, it also applies to suppression hearings." United States v. Daniels, 930 F.3d 393, 405 (5th Cir. 2019) (citing United States v. Stewart, 93 F.3d 189, 192 n.1 (5th Cir. 1996)). In this case, the Court need not resolve whether Pea's Sixth Amendment right of confrontation was violated by Morrison's testimony because such a finding does not affect the ultimate outcome. Even discounting all of Morrison's testimony and assuming arguendo that Pea was an invited guest, Pea still cannot prevail on his suppression motion. Indeed, even if he was an invited guest, Montgomery gave valid consent to the search of her home. The evidence of that consent was presented by Officer Pollitt, through live testimony, at the suppression hearing. This testimony was undisputed. Montgomery's valid consent to the search is dispositive of the entire inquiry. Thus, even without consideration of Morrison's testimony, Pea cannot prevail on his motion to suppress.

IV.     Conclusion.

For the foregoing reasons, the Court **ADOPTS** the findings of the Report and Recommendation [Record Document 29] and **DENIES** Pea's motion to suppress [Record Document 21].

**THUS DONE AND SIGNED** this 17th day of March, 2020.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE