**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 19-294-01 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| ORENTHA JAMES PEA (01) | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM ORDER

Before the Court is a motion for judgment of acquittal filed by the Defendant, Orentha Pea ("Pea"). Record Document 120. The Government opposes this motion. See Record Document 123. Following a thorough review of the parties' submissions and the record, the Defendant's motion is **DENIED**.

## I. Background.

Pea was indicted on two counts of unlawful possession of a firearm. One count alleged that he knowingly possessed a firearm after having been convicted of a felony offense, pursuant to 18 U.S.C. § 922(g)(1). The second count alleged that Pea knowingly possessed a firearm after having been convicted of a misdemeanor crime of domestic violence, pursuant to 18 U.S.C. § 922(g)(9). Pea's charges stemmed from a series of events that occurred on January 13 and 14, 2019, culminating in the victim, his wife Termekia Montgomery, calling 9-1-1 to report that Pea was inside her house armed with a gun. Upon the arrival of police, they found Pea inside the house and also discovered a loaded pistol in a utility closet inside the house. That gun had Pea's DNA on it.

The case proceeded to a three-day jury trial beginning on May 24, 2021. The evidence adduced at trial showed that on January 13, 2019, Montgomery was driving the

family (herself, Pea, and their children) from Mansfield, Louisiana to Shreveport, Louisiana. During the drive, Pea pulled out a gun, pointed it at Ms. Montgomery, and threatened to kill her. Ms. Montgomery managed to drop Pea off elsewhere before she returned home with the children. Later that night, Pea entered Ms. Montgomery's home, continued to threaten her with the gun, and ultimately locked her in the master bedroom. These events spilled over into January 14 and ultimately prompted Ms. Montgomery's 9-1-1 call to which police responded and because of which they searched her home for a gun. The police found the gun not where Ms. Montgomery suggested it would be (in places she viewed as his hiding spots), but rather in another location altogether. At trial, a DNA expert testified that Pea's DNA was discovered on the gun.

During the trial, Pea's defense centered on attacking the credibility of his family members who testified against him. This included not only Ms. Montgomery, but also two of the couple's children who testified for the Government. The theory repeatedly presented to the jury was that the family concocted this story to frame Pea and that any inconsistencies in their respective versions of events must be proof that they were lying. Consistent with this theory, Pea's defense argued that his family members planted his DNA on the gun with a toothbrush. In spite of his defense, the jury convicted Pea of both counts of the Indictment. This motion followed Pea's conviction.

## II. **Standard of Review for Rule 29 Judgment of Acquittal.**

The standard for evaluating a defendant's motion for acquittal is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781 (1979). Thus, the Court's task at this stage is to view not only the evidence, but also all reasonable inferences, in the light most favorable to the Government. See United States v. Mendoza, 522 F.3d 482, 488 (5th Cir. 2008). "[A]ll credibility determinations are made in the light most favorable to the verdict." Id. (quoting United States v. Moreno, 185 F.3d 465, 471 (5th Cir. 1999)). "In effect, the court assumes the truth of the evidence offered by the prosecution." United States v. Robertson, 110 F.3d 1113, 1117 (5th Cir. 1997). The Court reviews the sufficiency of circumstantial evidence in the same manner that it reviews the sufficiency of direct evidence. See United States v. DeJean, 613 F.2d 1356, 1358 (5th Cir. 1980). Moreover, "[a]ll evidence is considered, not just that supporting the verdict, but the evidence need not conclusively disprove alternatives; the jury is free to choose among reasonable constructions of the evidence." United States v. Peterson, 244 F.3d 385, 389 (5th Cir. 2001) (internal marks omitted). "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt . . . ." United States v. Lopez, 74 F.3d 575, 577 (5th Cir. 1996). "Circumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof." United States v. Vasquez, 677 F.3d 685, 692 (5th Cir. 2012). "Jurors may properly 'use their common sense' and 'evaluate the facts in light of their common knowledge of the natural tendencies and inclinations of human beings.'" Id. (quoting United States v. Ayala, 887 F.2d 62, 67 (5th Cir. 1989)).

Therefore, this Court will not weigh the evidence or assess the credibility of witnesses, Lopez, 74 F.3d at 577, but rather will determine "only whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence." United States v. Dean, 59 F.3d 1479, 1484 (5th Cir. 1995). However, "[a] verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." United States v. Moreland, 665 F.3d 137, 149 (5th Cir. 2011). "If the evidence is relatively balanced, a reasonable juror could not convict beyond a reasonable doubt . . . ." Peterson, 244 F.3d at 389. Under those circumstances, the Court should grant the Defendant's motion.

### III. Analysis.

Here, the Court finds that the evidence presented during the three-day trial in this matter clearly supported the jury's verdict, which found Pea guilty of two counts of unlawful possession of a firearm. The jury heard testimony from Ms. Montgomery, who testified that Pea possessed the gun on January 13 and that he threatened to use the gun to kill her on that date. She also testified that Pea still had possession of the gun on January 14, 2019. Ms. Montgomery's testimony was not the sole evidence in support of Pea's guilt. The couple's son, Kyvonte Montgomery, corroborated his mother's testimony by testifying that Pea had the gun in his possession on January 13 and January 14. Kyvonte testified as to the events that took place during the drive from Mansfield to Shreveport, specifically that Pea pulled a gun and threatened to harm Ms. Montgomery. Further, the Government presented evidence of Pea's DNA on the charged weapon itself.

4

Thus, there was both testimonial and physical evidence establishing Pea's unlawful possession of the charged weapon on or about January 13 and 14, 2019.

Pea's contention that his wife and son are not credible witnesses is unpersuasive, especially given the legal standard with which this motion must be reviewed. That is, all credibility determinations must be resolved in favor of the verdict. That the witnesses did not testify identically with respect to every detail does not create the inference that Pea's family framed him for this crime, nor does it compel the Court to find the testimony "incredible as a matter of law." Record Document 120-1, p. 3. The inconsistencies were explored at trial in front of the jury, yet the jury chose not to accept Pea's assertion that he was being framed. There was an abundance of consistent, compelling evidence to allow the jury to credit the family members' testimony over the explanations offered by the defense. The Court will not disturb the jury's findings.

Furthermore, while Pea understandably focuses his attention on the inconsistencies between the testimony of these witnesses, particularly Ms. Montgomery and Kyvonte Montgomery, it must be noted that their testimony was overall consistent. As to January 13, they testified consistently that Ms. Montgomery was driving the SUV, Pea was in the front passenger seat, and the children were in the rear of the vehicle; they testified consistently that while in the vehicle, Pea pulled a gun on Ms. Montgomery and pointed it at her; they testified consistently that Pea threatened Ms. Montgomery with the gun; they testified consistently that this event happened in front of her children, while she was driving the family from one city to another. As to January 14, they testified consistently that Pea demanded Ms. Montgomery drive him to a nearby store; they testified

consistently that they were in the vehicle with Pea during this trip; they testified consistently that once Pea was inside the store, Ms. Montgomery drove away; they testified consistently that she then called 9-1-1 to report his threats and his possession of the gun; they testified consistently that Pea was the only one inside the house when police arrived and conducted a search; and they testified consistently that they waited inside the SUV until they were approached by the police.

Given the substantial direct and circumstantial evidence presented at trial, it can hardly be said that the jury's guilty verdict was not a "rational decision," nor can the jury be faulted for declining to accept the defense's suggestion that Ms. Montgomery or others planted Pea's DNA on the gun with a toothbrush. Accordingly, the Defendant's motion for judgment of acquittal is denied.

## IV. Conclusion.

After a careful and thorough review of the record and the governing jurisprudence, the Defendant's motion for a judgment of acquittal [Record Document 120] be and is hereby **DENIED**.

**THUS DONE AND SIGNED** this 7th day of July, 2021.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE