# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 19-0294 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| ORENTHA JAMES PEA | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 filed by Defendant Orentha James Pea ("Pea"). Record Document 163. The Government opposes Pea's motion and argues he is not entitled to any relief. Record Document 174.

For the reasons assigned herein, Pea's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [Record Document 163] is **DENIED** and **DISMISSED WITH PREJUDICE**.

## Background

On September 25, 2019, Pea was charged in a two-count indictment for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) ("Count One"), and being in possession of a firearm after having been convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2) ("Count Two"). Record Document 1.

The Court has previously recounted the factual background of Pea's arrest:

Pea's charges stemmed from a series of events that occurred on January 13 and 14, 2019, culminating in the victim, his wife Termekia Montgomery [("Montgomery")], calling 9-1-1 to report that Pea was inside her house

armed with a gun. Upon the arrival of police, they found Pea inside the house and also discovered a loaded pistol in a utility closet inside the house. That gun had Pea's DNA on it.

Record Document 126 at 1.

Before trial, Pea filed a motion to suppress the evidence found during the search of Montgomery's home. Record Document 21. Pea argued the search violated his Fourth Amendment right because officers conducted it over his explicit refusal to consent to the search. *Id.* The Magistrate Judge held a hearing and ultimately issued a report and recommendation to deny Pea's motion based on the findings that: (1) Pea did not have standing to challenge the search because he was an uninvited guest in Montgomery's home; and (2) Montgomery gave valid consent to the search of her home. Record Document 29. The Court adopted the Magistrate Judge's report and recommendation and held that the search did not violate Pea's Fourth Amendment rights.[1] Record Document 32.

Pea then proceeded to trial.

The evidence adduced at trial showed that on January 13, 2019, Montgomery was driving the family (herself, Pea, and their children) from Mansfield, Louisiana to Shreveport, Louisiana. During the drive, Pea pulled out a gun, pointed it at Ms. Montgomery, and threatened to kill her. Ms. Montgomery managed to drop Pea off elsewhere before she returned home with the children. Later that night, Pea entered Ms. Montgomery's home, continued to threaten her with the gun, and ultimately locked her in the master bedroom. These events spilled over into January 14 and ultimately

---

[1] After Pea's motion to suppress was denied, Pea's counsel filed a motion to withdraw. Record Document 47. The Court granted the motion and appointed Pea new counsel. Record Documents 48 & 49. Pea's motion focuses on the alleged ineffectiveness of his trial and appellate counsel. *See* Record Document 163. However, as explained *infra*, none of the decisions made regarding the motion to suppress or subsequent challenges to the search of Montgomery's home were deficient. Thus, the Court does not distinguish between counsel in its analysis.

> prompted Ms. Montgomery's 9-1-1 call to which police responded and because of which they searched her home for a gun. The police found the gun not where Ms. Montgomery suggested it would be (in places she viewed as his hiding spots), but rather in another location altogether. At trial, a DNA expert testified that Pea's DNA was discovered on the gun.

Record Document 126 at 1-2. After a three-day trial, the jury found Pea guilty on both counts. Record Document 117.

After the verdict was returned and before sentencing, the Court granted a motion by the Government to vacate Pea's conviction as to Count Two.[2] *See* Record Document 135 (granting Record Document 134). Thus, Pea proceeded to sentencing on Count One only. With a total offense level of 28 and a criminal history category of V, Pea's Guidelines range would have been 130 to 162 months. Record Document 151 at 19. However, because the maximum term of imprisonment for Pea's crime of conviction was 120 months, the Guidelines term of imprisonment was 120 months. *Id.*; *see also* U.S.S.G. § 5G1.1(a). The Court sentenced Pea to 120 months imprisonment and three years of supervised release. Record Document 148 at 2-3. Pea's term of imprisonment was to run concurrently with Pea's anticipated state sentences for related conduct and consecutively to Pea's anticipated state sentence for unrelated conduct.[3]

---

[2] The Government moved to vacate Pea's conviction as to Count Two based on Fifth Circuit precedent holding that "multiple convictions for the same act of possessing a firearm based on multiple illegal statuses under § 922(g) violate the offender's rights against double jeopardy." Record Document 134 (citing *United States v. Munoz-Romo*, 989 F.2d 757, 759 (5th Cir. 1993)).

[3] The Court specified that Pea's sentence was to run concurrently with any state court sentence imposed for possession of a firearm or carrying of a concealed weapon by a felon and for illegal possession of a stolen firearm. However, his sentence was to run consecutively to any state court sentence imposed for aggravated assault with a firearm. Record Document 148 at 2.

On appeal, Pea argued the Court erred in denying his motion to suppress. Record Document 162 at 3-4. The Fifth Circuit affirmed, finding that regardless of whether Pea had standing to challenge the search of Montgomery's home, the search was proper because officers conducted it with Montgomery's consent. *Id.* at 4. The Fifth Circuit reasoned that Pea's objection to the search only "after he was arrested and placed in a police cruiser" could not override Montgomery's prior consent. *Id.*

In the instant motion, Pea argues he is entitled to relief because there was an unconstitutional search and seizure, no probable cause for his arrest, entrapment, inconsistent, false, and/or perjured testimony at trial, and a violation of the Double Jeopardy Clause.[4] Record Document 163. Pea contends he did not raise these issues on appeal because his counsel was ineffective. *Id.* Additionally, Pea claims his counsel was ineffective for failing to secure grand jury testimony, Montgomery's phone records, and bills for Montgomery's home. *Id.* Pea also claims his counsel was ineffective for advising him not to testify at trial. *Id.*[5]

---

[4] After Pea filed his § 2255 motion, the Court ordered him to file a supplemental memorandum in support of his motion by January 6, 2023, detailing the factual and legal reasons why relief should be granted. Record Document 167. To date, Pea has not filed any supplemental memorandum.

[5] In his motion, Pea requests relief in the form of a reduction of sentence or a transfer to home confinement. Record Document 163 at 12. As justification for this request for relief, Pea cites his mother's age and health concerns as well as his own rehabilitation. *Id.* This justification and request for relief is more properly considered through a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Pea did in fact file a motion for compassionate release, which was denied by this Court on April 16, 2025. Record Documents 183 & 189. Nothing in Pea's § 2255 motion disturbs the Court's findings in that ruling. To the extent that Pea's instant motion can be construed as a motion for compassionate release, it is **DENIED**.

## Law and Analysis

### I.    Relevant Law

#### A.  28 U.S.C. § 2255

Under 28 U.S.C. § 2255, a prisoner may move to vacate, set aside, or correct a sentence imposed by a federal court if: (1) the sentence "was imposed in violation of the Constitution or laws of the United States[;]" (2) "the court was without jurisdiction to impose such sentence[;]" (3) "the sentence was in excess of the maximum authorized by law[;]" or (4) the sentence "is otherwise subject to collateral attack." *United States v. Scruggs*, 691 F.3d 660, 666 (5th Cir. 2012); 28 U.S.C. § 2255(a).

"As the Supreme Court holds, '[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal.'" *United States v. Cooper*, 548 F. App'x 114, 115 (5th Cir. 2013) (internal quotations and citations omitted) (quoting *Bousley v. United States*, 523 U.S. 614, 620 (1998)). After a defendant is convicted and exhausts the right to appeal, a court is "entitled to presume that the defendant stands fairly and finally convicted." *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (internal marks omitted) (quoting *United States v. Frady*, 456 U.S. 152, 164 (1982)).

#### B.  Ineffective Assistance of Counsel

The Court may consider a petitioner's ineffective assistance of counsel claim for the first time on a § 2255 motion. *See United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). To state a successful claim of ineffective assistance of counsel, petitioner must demonstrate two things: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687

5

(1984). Failure to establish either prong of the *Strickland* test will result in a finding that counsel's performance was constitutionally effective. *Id.*; *see also Tucker v. Johnson,* 115 F.3d 276, 280 (5th Cir. 1997). The petitioner bears the burden of proof of showing both prongs are met. *See Strickland*, 466 U.S. at 687. A court may reject an ineffective assistance of counsel claim upon an insufficient showing of either deficient performance or prejudice without inquiry into the remaining prong. *See id.* at 689-94.

When determining whether counsel's performance was deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (internal quotation omitted)). If a tactical decision is "conscious and informed . . . [, it] cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999). Courts must be "highly deferential" to counsel's performance and make every effort "to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Thus, this Court's review "strongly presum[es] that counsel has exercised reasonable professional judgment." *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996) (quoting *Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir. 1986)).

To establish the second prong of prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id.* A defendant is not prejudiced if "the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Self-serving conclusory statements that the outcome would have been different "fall[ ] far short of satisfying *Strickland*'s prejudice element." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001).

"While the Constitution guarantees criminal defendants a competent attorney, it does not insure [sic] that defense counsel will recognize and raise every conceivable . . . claim." *Jones v. Davis*, 673 F. App'x 369, 375 n.54 (5th Cir. 2016) (quoting *Ragland v. United States*, 756 F.3d 597, 601 (8th Cir. 2014)). "Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim." *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990); *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

### C. Procedural Bar

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Young*, 77 F. App'x 708, 709 (5th Cir. 2003) (citing *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)). Thus, even if the issues are constitutional or jurisdictional in nature, a defendant may be procedurally barred from raising them in a collateral attack

because collateral review is fundamentally different from and cannot serve as a substitute for a direct appeal.

If the constitutional or jurisdictional claims were not raised on direct appeal, the defendant's claims can only be considered on collateral review if he can show both "cause" for his procedural default and "actual prejudice" resulting from the alleged error. *Shaid*, 937 F.2d at 232. In the absence of a showing of cause and prejudice, a procedurally defaulted claim can only be considered by the court if the defendant can establish actual innocence, which means that it is more likely than not that no reasonable juror would have convicted the defendant of the offense. *Bousley*, 523 U.S. at 622.

However, claims based on ineffective assistance of counsel are generally not subject to procedural default and can be raised on a § 2255 motion even if they were not raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 509 (2003) ("[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."); *United States v. Willis*, 273 F.3d 592, 597 n.7 (5th Cir. 2001).

## II.    Analysis

### A.  Claims Subject to Procedural Default

The Court first considers whether, as the Government contends, Pea's claims are procedurally barred because they were not raised on direct appeal. The only claim raised in Pea's direct appeal was his challenge to the Court's findings and decision on his motion to suppress. *See* Record Document 162. Thus, all Pea's claims except for those based on the allegedly unlawful search and seizure (which was raised on direct appeal) and those

based on ineffective assistance (which are not subject to the procedural default rule) are procedurally barred. This includes Pea's claims based on the lack of probable cause for his arrest, entrapment, inconsistent, false, and/or perjured testimony at trial, and double jeopardy. For Pea to overcome the procedural bar, he must show cause for the procedural default and actual prejudice that resulted.[6] *See Shaid*, 937 F.2d at 232.

The Fifth Circuit describes cause as "'some objective factor external to the defense' [that] prevented [the defendant] from raising on direct appeal the claim he now advances." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (quoting *Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir. 1992)). "Objective factors that constitute cause include interference by officials that makes compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel at the prior occasion, and ineffective assistance of counsel in the constitutional sense." *Id.* (citing *Romero*, 961 F.2d at 1183).

---

[6] As explained *supra*, a court may alternatively consider a procedurally defaulted claim if the defendant can establish actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). A defendant makes a viable claim of actual innocence when he shows it is more likely than not that no reasonable juror would have convicted the defendant of the offense. *Id.*

"Tenable actual-innocence gateway pleas are rare: A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Hancock v. Davis*, 906 F.3d 387, 389 (5th Cir. 2018) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)) (internal marks omitted). Further, "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). Pea has not made any cognizable claim of actual innocence.

The only cause Pea appears to argue is that his attorney was ineffective for failing to raise on appeal the various issues Pea now brings before the Court. It is true that "[i]neffective assistance of counsel may constitute 'cause' for a procedural default." *Cotton v. Cockrell*, 343 F.3d 746, 754 (5th Cir. 2003). But ultimately, as discussed *infra*, the Court concludes that each of Pea's underlying claims is meritless, meaning that Pea's counsel was not ineffective for failing to raise these claims. *See Smith*, 907 F.2d at 585 n.6 ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."). Therefore, Pea's claims based on lack of probable cause for his arrest, entrapment, and inconsistent, false, and/or perjured testimony at trial are procedurally barred.

### i.    Probable Cause

Pea argues there was no probable cause for his arrest because he was initially arrested for aggravated assault, which was "rejected by the state." Record Document 163 at 14.

"Probable cause" is defined as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). As the Fifth Circuit has explained:

> A determination of whether probable cause existed for making an arrest does not depend upon whether the defendants were eventually convicted, nor whether they were convicted on the same charge on which they were arrested, but whether the police had probable cause at the time to believe that an offense had been committed.

*United States v. Seay*, 432 F.2d 395, 400 (5th Cir. 1970).

At the time of Pea's arrest, police had probable cause to believe Pea had committed, was committing, or would soon commit an offense based on the statements made by Montgomery and their discovery of a firearm in the home. Pea's allegation that he was not ultimately convicted by the state of this offense does not change that evaluation.[7] Any argument that probable cause did not exist for Pea's arrest would have been meritless. Thus, Pea's counsel was not ineffective for failing to raise the issue on appeal. This claim is procedurally barred and otherwise meritless.

### ii.    Entrapment

Next, Pea argues his conviction is unlawful based on a theory of entrapment. According to Pea, Montgomery called him and asked him to come back to Shreveport, Louisiana to "lure [him] around a gun." Record Document 163 at 7.

"Entrapment occurs only when the criminal conduct was 'the product of the creative activity' of law-enforcement officials." *Sherman v. United States*, 356 U.S. 369, 372 (1958) (quoting *Sorrells v. United States*, 287 U.S. 435, 441, 451 (1932)). In other words, entrapment requires some kind of action or activity by law enforcement. Pea does not allege any law enforcement activity. The actions he alleges were taken solely by his wife, without any direction or instruction from law enforcement. *See* Record Document 163 at 7. Therefore, Pea's argument regarding the entrapment defense is meritless and

---

[7] At the time Pea's presentence investigation report was prepared, he had pending state charges related to his January 14, 2019, arrest. Record Document 151 at 13. This includes charges for (1) possession of a firearm or carrying of a concealed weapon by a felon; (2) aggravated assault with a firearm; and (3) illegal possession of a stolen firearm. *Id.*

Pea's counsel was not ineffective for failing to raise the issue on appeal. This claim is procedurally barred and otherwise meritless.

### iii.    Inconsistent/False/Perjured Statements

Pea next claims he is entitled to relief because there were inconsistent, false, or perjured statements made during the proceedings in this matter. He argues the officer testified differently at trial, the motion to suppress hearing, and the grand jury proceeding.[8] *Id.* at 5. He also argues that false statements were made. Specifically, Pea states that while the officer said that nobody told them where in the home to look for the gun, he heard Montgomery directing them. *Id.* at 13. He states that Kyvonte Montgomery ("Kyvonte") originally said he did not see Pea with a gun, but later said he did see Pea with a gun. *Id.* He also states that an officer testified that Pea was removed from the home and taken to the weight bench in the garage. *Id.* Finally, he states that some

---

[8] On June 11, 2025, Pea filed a motion for production and inspection of grand jury materials. Record Document 192. In the motion, Pea requested all documents related to the grand jury proceedings in this matter, including but not limited to a transcript of the testimony and any notes, documents, papers, or reports relied upon by witnesses or the Government. *Id.* at 1-2. In ruling on that motion, the Court explained the standard for accessing grand jury materials and ultimately denied Pea's motion. Record Document 193 at 2-3. The Court invited Pea to reurge his motion if he believed he could make a showing of a particularized need for any specific material(s). *Id.* To date, no motion so arguing has been filed.

The Court notes that after the Court denied Pea's order, he contacted a court reporter to request a copy of the grand jury transcript, his trial transcript, and several other court documents. Record Document 196. While Pea's letter states that he does not know how to file a motion, the Court observes that Pea has filed several motions with this Court in the recent past, including the instant motion. Pea should submit all transcript requests and requests for other relief by filing a motion with the Clerk of Court.

witnesses testified based on a story fabricated and fed to them by Montgomery. *Id.* Pea argues the officer and witnesses should have been prosecuted for perjury. *Id.* at 14.

Inconsistent testimony is distinct from perjured testimony. "Contradictory testimony does not prove perjury." *United States v. Neal*, 245 F.3d 790, 790 (5th Cir. 2000) (citing *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990)). Contentions that there was a constitutional violation "based solely on allegedly contradictory testimony at trial or on an alleged prior inconsistent statement" are conclusory and "do[] not give rise to any constitutional issue." *Id.*

Instead, constitutional issues arise "if (1) the statements in question are shown to be actually false; (2) the prosecution knew that they were false; and (3) the statements were material." *United States v. O'Keefe*, 128 F.3d 885, 893 (5th Cir. 1997). "The Supreme Court has held that the Due Process Clause is violated when the government knowingly uses perjured testimony to obtain a conviction." *Kinsel v. Cain*, 647 F.3d 265, 271 (5th Cir. 2011) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)); *see also Brady v. Maryland*, 373 U.S. 83, 87 (1963) (finding that a defendant is denied due process "when the State, although not soliciting false evidence, allows [false evidence] to go uncorrected when it appears" (quoting *Napue*, 360 U.S. at 269)). This is because "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972) (internal quotation omitted).

Here, Pea's contention that false statements were made relies solely on his own conclusion that the statements were false.[9] Record Document 163 at 15. He points to various inconsistencies in witnesses' testimony, but again, "[c]ontradictory testimony does not prove perjury." *Neal*, 245 F.3d at 790. "[I]nconsistencies between the testimony of witnesses is an issue of credibility for the jury to weigh[.]" *Green v. United States*, No. 10-CR-0185, 2013 WL 12222406, at *19 (W.D. Tex. Apr. 17, 2013) (citing *United States v. Polk*, 56 F.3d 613, 620 (5th Cir. 1995), *report and recommendation adopted*, 2014 WL 12713064 (W.D. Tex. Dec. 5, 2014). Pea proceeded to trial and credibility determinations regarding the testifying witnesses were made by the jury.

Inconsistencies in witnesses' testimony were addressed at trial. As the Government points out, Pea's counsel cross-examined witnesses—particularly Montgomery—about various inconsistencies in her testimony. *See, e.g.*, Record Document 158 at 69-70 (Pea's counsel cross-examining Montgomery about inconsistent statements about which children were in the car and where they were sitting); *id.* at 73 (Pea's counsel cross-examining Montgomery about the fact that she did not tell law enforcement she took her children to school before she called 9-1-1); *id.* at 77 (Pea's counsel cross-examining Montgomery about the fact that she did not tell law enforcement Pea let her out of her locked bedroom in the morning); *id.* at 80 (Pea's counsel cross-examining Montgomery about the fact that she did not tell law enforcement Pea hit her repeatedly with an open hand in the face).

---

[9] To the extent that any statements were actually false, Pea does not allege that the Government was aware those statements were false.

Pea's counsel also cross-examined Pea's son Kyvonte about his statements. Trial testimony established that when law enforcement initially spoke to Kyvonte, he told them he did not see or hear the incident between Pea and Ms. Montgomery. *See id.* at 139, 142. However, when law enforcement returned to the house later the same day, Kyvonte told law enforcement about the incident. *See id.* at 139, 142-43. Kyvonte testified he first told the officers he did not see or hear anything because he "did not want to get in [Pea and Ms. Montgomery's] business," and because he was scared. *Id.* at 143.[10]

At and after trial, Pea's counsel argued that inconsistencies in the witnesses' testimony was a valid basis for a judgment of acquittal. The Court has previously addressed those inconsistencies. In ruling on Pea's oral motion for a judgment of acquittal, the Court acknowledged potential inconsistencies in witnesses' statements, but emphasized that in deciding a Rule 29 motion, all credibility determinations are resolved in light of the verdict. *Id.* at 245. The Court specifically addressed the inconsistencies in Kyvonte's statements to law enforcement. The Court explained that it was for the jury to determine Kyvonte's credibility:

> Kyvonte Montgomery was a 13-year-old at the time of this incident. He reluctantly admitted to law enforcement that he had seen his father hold a gun to his mother's head on January the 13th, 2019. He had previously told law enforcement that he didn't see anything, but I think that his reluctance in admitting this is characteristic of his age. There again, it's not up to me at this stage to make a credibility call. The important thing is that he did

---

[10] Pea's counsel also attempted to cross-examine Kyvonte about other inconsistencies. For example, Pea's counsel attempted to cross-examine Kyvonte about his failure to mention during his grand jury testimony that Kyvonte's brother grabbed Pea during one of the incidents. *See* Record Document 158 at 133. However, the Court found that unless Kyvonte had been previously asked the question and answered differently, the mere fact that he failed to mention it during his previous testimony did not provide grounds for impeachment. *Id.*

> admit it to the police officer in a short time subsequent to the initial denial that he hadn't seen anything and admitted what he had seen and he admitted it to us today on the stand.

*Id.* Additionally, the Court noted that while there were "slight differences in [Kyvonte's] testimony and Ms. Montgomery's testimony as to how many people were in the car," that fact was not material as to the element of the crime at issue, that is, whether Pea possessed a firearm. *Id.* at 245-46.

Again in its written ruling on Pea's written, post-verdict motion for judgment of acquittal, the Court reiterated the Rule 29 standard. Record Document 126 at 5. The Court explained that "while Pea understandably focuse[d] his attention on the inconsistencies between the testimony of these witnesses, particularly Ms. Montgomery and Kyvonte Montgomery, . . . their testimony was overall consistent." *Id.* However, to the extent inconsistencies existed, they did not undermine the validity of Pea's conviction:

> That the witnesses did not testify identically with respect to every detail does not create the inference that Pea's family framed him for this crime, nor does it compel the Court to find the testimony "incredible as a matter of law." Record Document 120-1, p. 3. The inconsistencies were explored at trial in front of the jury, yet the jury chose not to accept Pea's assertion that he was being framed. There was an abundance of consistent, compelling evidence to allow the jury to credit the family members' testimony over the explanations offered by the defense. The Court will not disturb the jury's findings.

*Id.* For the same reasons as articulated in the Court's previous rulings, any inconsistencies in the witnesses' testimony remain insufficient to disturb Pea's conviction.

Thus, any claim Pea's counsel raised regarding inconsistent or false statements would have been meritless. Pea's counsel was not ineffective in handling any inconsistent

statements and was not ineffective for failing to raise concerns regarding those statements on appeal.

### iv.    Double Jeopardy

Pea claims that his conviction violates the Double Jeopardy Clause because he was convicted by both the state and federal government for being a felon in possession of a firearm for possessing the same gun.[11] Record Document 163 at 15. However, "[u]nder the dual sovereignty doctrine, prosecution is allowed for the same criminal conduct in federal and state court." *United States v. Age*, 136 F.4th 193, 242 (5th Cir. 2025) (citing *Gamble v. United States*, 587 U.S. 678, 681 (2019) ("[A] State may prosecute a defendant under state law even if the Federal Government has prosecuted him for the same conduct under a federal statute.")). Thus, Pea's prosecution by both the federal and state government for being a felon in possession of a firearm did not subject him to double jeopardy. Because any double jeopardy claim would be meritless, Pea's counsel was not ineffective for failing to raise that claim on direct appeal.

In sum, Pea's claims based on lack of probable cause for his arrest, entrapment, inconsistent, false, and/or perjured testimony, and double jeopardy are procedurally barred because Pea did not raise those claims on direct appeal. Pea cannot overcome the cause and prejudice standard because his substantive claims are meritless, and his counsel was therefore not ineffective for failing to raise those claims on appeal.

---

[11] Pea states that he was given "10 years on one and 15 years on the other." Record Document 163 at 15. The Court notes that its judgment in this matter specifies that Pea's federal conviction is to run concurrently with Count One and Count Three of his state court charges (i.e., his state charges for being a felon in possession of a firearm and for illegal possession of a stolen firearm). Record Document 148 at 2.

## B.  Substantive Analysis of Remaining Claims

The Court turns to Pea's claims that are not procedurally defaulted. These claims include his contentions that (1) the search of Montgomery's home and subsequent seizure of the firearm found therein was unconstitutional, and (2) his counsel was ineffective. Record Document 163. The Court addresses each in turn.

### i.    Constitutionality of Search and Seizure

Pea argues the search of Montgomery's home and seizure of the firearm therein was unconstitutional. *Id.* at 4. This claim was raised on direct appeal and was thus not procedurally defaulted. Record Document 162. However, this claim is without merit. The Fifth Circuit explicitly considered and decided the lawfulness of the search. *See id.* Further, Pea's counsel could not have been ineffective for failing to raise this argument because he did in fact raise it before the Fifth Circuit. Thus, Pea's claim regarding the search and seizure of Montgomery's home fails.

### ii.    Ineffective Assistance of Counsel

The Court next considers the remaining subset of claims that were not procedurally defaulted—Pea's claims of ineffective assistance of counsel. Pea contends his counsel was ineffective for (1) failing to secure certain grand jury testimony, (2) failing to obtain Montgomery's phone records, (3) failing to secure bills for Montgomery's home that were in his name, and (4) advising him to not testify at trial.[12] Record Document 163 at 8-9. Ultimately, each of these contentions is meritless.

---

[12] Pea also argues his counsel was ineffective for failing to raise certain arguments on appeal. Those grounds are discussed and dismissed *supra*.

First, Pea argues his counsel was ineffective for failing to secure grand jury testimony by his children Airlia Montgomery, De'Monta Montgomery, and Orentha Pea, Jr. *Id.* at 8. However, Pea does not explain what any of these witnesses testified to before the grand jury nor how that testimony could have been helpful to him at trial. Thus, he fails to meet his burden of showing his counsel was ineffective for failing to secure and/or introduce statements made by these witnesses before the grand jury. *McCoy v. Cabana*, 794 F.2d 177, 183 (5th Cir. 1986) ("[T]he Supreme Court [has] held that there is a strong presumption that an attorney's decision to introduce or withhold evidence is a tactical decision made 'in the exercise of reasonable professional judgment.'" (quoting *Strickland*, 466 U.S. at 690)).

Second, Pea argues his counsel was ineffective for failing to obtain Montgomery's phone records. Record Document 163 at 8. According to Pea, these phone records would have shown that Montgomery was "using her phones on the days she said [Pea] had a gun on her" and thus could have called the police at any time. *Id.* However, whether Montgomery could have called the police at an earlier time is immaterial to Pea's guilt. That is, Montgomery's alleged access or non-access to her phone has no bearing as to whether Pea was a felon in possession of a firearm. In any event, Pea's counsel did cross-examine Montgomery and other witnesses about Montgomery's access to her cell phone on the days in question. *See, e.g.*, Record Document 158 at 72-73, 137, 179. Thus, Pea fails to meet his burden of showing his counsel was ineffective for failing to obtain the phone records.

Third, Pea argues his counsel was ineffective for failing to secure bills for Montgomery's home that were in his name. Record Document 163 at 8. Pea argues that these documents could have bolstered his challenge regarding the search of Montgomery's home. *Id.* However, as the Government points out, even if Pea's counsel had obtained bills for the home in Pea's name, the challenge to the search would remain unsuccessful. *See* Record Document 174 at 12. Any bills with Pea's name would have borne only on the question of whether Pea had standing to challenge the search. However, the Fifth Circuit held that "*[r]egardless of whether Pea was a guest who had standing to challenge the search of [Montgomery]'s residence*, the search was not improper because it was conducted with [Montgomery]'s consent." Record Document 162 at 4 (emphasis added). Documents showing that Pea was listed on the bills for the home would not have changed the fact that Montgomery consented to the search and that the search was lawful. Thus, Pea fails to meet his burden of showing his counsel was ineffective for failing to obtain bills for Montgomery's home.

Finally, Pea briefly states his counsel told him "not to testify at trial because it would look bad." Record Document 163 at 9. In determining whether counsel was ineffective, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Pea does not provide any facts or argument to overcome that presumption. Pea's counsel was not ineffective for offering his advice regarding trial strategy, which reasonably could have

involved a recommendation against Pea testifying.[13] Pea does not explain why any such advice rendered his counsel ineffective. Thus, Pea fails to meet his burden of showing his counsel was ineffective for advising that Pea not testify at trial.

In sum, Pea's claims based on a lack of probable cause for his arrest, entrapment, inconsistent, false, or perjured testimony, and double jeopardy are procedurally barred because they were not raised on direct appeal. Pea cannot show cause and prejudice for procedurally defaulting these claims because his counsel was not ineffective for failing to raise them on appeal. Pea's claim based on an unlawful search of Montgomery's home and/or based on his counsel's failure to raise such an argument on appeal is meritless. Pea's counsel did raise this argument both in the district court and on appeal, and both courts determined that the search and seizure was lawful. Pea's claims that his counsel was ineffective for failing to raise various issues on appeal, for failing to secure grand

---

[13] Pea was charged with being a felon in possession of a firearm and possession of a firearm having been previously convicted of a misdemeanor crime of domestic violence. Record Document 1. The Court accepted stipulations that Pea had been previously convicted of a felony crime, had been previously convicted of a misdemeanor crime of domestic violence, and was aware of both convictions. *See* Record Documents 79 at 9 & 114 at 10-11. "By stipulating to his prior conviction[s] at trial, [Pea] invoked the protections of *Old Chief v. United States*, 519 U.S. 172, 190-91 (1997), precluding the prosecution from introducing evidence of the nature of [Pea]'s prior crimes or the sentence(s) he received." *United States v. Huntsberry*, 956 F.3d 270, 285 n.8 (5th Cir. 2020).

However, if Pea had testified at trial, he would have lost the protections of *Old Chief*. "[B]y putting his knowledge at issue . . . [Pea] would be allowing the government to introduce evidence about the nature of his conviction that would otherwise be too prejudicial." *Id.* (citation omitted). Thus, if Pea chose to testify, the facts and nature of his prior convictions could have become admissible at trial. It would be sound trial strategy for Pea's counsel to advise him against testifying given the consequences of that decision.

jury testimony, Montgomery's phone records, bills for Montgomery's home, and for counseling him not to testify at trial all fail because Pea has not met his burden of showing his counsel was ineffective. Thus, Pea does not present any viable claims for relief under § 2255.

### Conclusion

For the reasons assigned herein, Pea's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [Record Document 163] is hereby **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to Rule 11(a) of the Rules governing § 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. Unless a Circuit Justice or a Circuit or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeal. In this case, a certificate of appealability is **DENIED** because Pea has failed to demonstrate a substantial showing of the denial of a constitutional right.

**THUS DONE AND SIGNED** this 11th day of August, 2025.

_____

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE